MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
Roshni C. Kapoor, Bar No. 310612
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
Fax: +1.415.442.1001
eric.meckley@morganlewis.com
roshni.kapoor@morganlewis.com

Attorneys for Defendant
ZIMMER US, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KARL, an individual, <br><br> *Plaintiff*, <br><br> vs. <br><br> ZIMMER BIOMET HOLDINGS, INC., a business entity; ZIMMER US, INC., a Delaware corporation; BIOMET U.S. RECONSTRUCTION, LLC, a business entity; BIOMET BIOLOGICS, LLC, a business entity; BIOMET, INC., an Indiana corporation; DONALD QUIGLEY, an individual; and DOES 1 through 50, inclusive, <br><br> *Defendants*. | Case No.  3:22-cv-03435 <br><br> **NOTICE OF REMOVAL BY ZIMMER US, INC.** <br><br> **[28 U.S.C. §§ 1332, 1441, 1446]** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF:**

PLEASE TAKE NOTICE THAT, Defendant Zimmer US, Inc. hereby removes the above-entitled action from the Superior Court of California, County of Marin, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. This removal is based on the following grounds:

**I.      PROCEDURAL BACKGROUND**

1.      On April 18, 2022, Plaintiff James Karl filed a civil action in the Superior Court of California, County of Marin, entitled *James Karl v. Zimmer Biomet Holdings, Inc. et al.*, Case No. CIV2201089 ("Complaint"), against Zimmer Biomet Holdings, Inc.; Zimmer US, Inc.; Biomet U.S. Reconstruction, LLC; Biomet Biologics, LLC; and Biomet, Inc. ("Zimmer Defendants") and Donald Quigley, which purports to allege causes of action for unlawful retaliation, Cal. Lab. Code § 1102.5(b); failure to pay wages due and owing during employment, Cal. Lab. Code §§ 200, 204, 218.5, and 218.6; wrongful termination in violation of public policy—constructive discharge; unfair/unlawful competition practices, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; intentional infliction of emotional distress (IIED); retaliation for filing employee safety complaint, Cal. Lab. Code § 6310; negligent misrepresentation; and intentional misrepresentation.

2.      The Summons and Complaint were served on Zimmer US, Inc. on May 13, 2022, via personal service through its registered agent for service of process. True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and Civil Lawsuit Notice are attached as **Exhibit A**.

3.      The documents attached as **Exhibit A** constitute all process, pleadings, and orders that have been served on Zimmer US, Inc. in the Superior Court action to Zimmer US, Inc.'s knowledge.

4.      Zimmer Biomet Holdings, Inc.; Biomet U.S. Reconstruction, LLC; Biomet Biologics, LLC; and Biomet, Inc. have not been served with the Summons and Complaint.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

5.    Based on communications between counsel to Plaintiff and counsel to Defendants, Plaintiff indicated that he would send a Notice of Acknowledgement of Service of Summons for Defendant Donald Quigley, but to date, has not done so.

## II.    REMOVAL IS PROPERLY BASED UPON DIVERSITY JURISDICTION

6.    This is a civil action over which this Court has original diversity jurisdiction under 28 U.S.C. §1332, and this matter may be removed to this Court under 28 U.S.C. §§ 1441(a) and (b) in that the amount in controversy exceeds $75,000, exclusive of interests and costs, and the action involves citizens of different states.

### A.    Complete Diversity of Citizenship Exists Between the Parties.

7.    Complete diversity exists under 28 U.S.C. § 1332 between Plaintiff and Defendants because Plaintiff is a California citizen, the Zimmer Defendants are not California citizens, and Defendant Quigley is a "sham" defendant and his citizenship is not considered for removal purposes.

### 1.    Plaintiff Is a Citizen of California.

8.    A "natural person's state citizenship is . . . determined by her state of domicile." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  "[O]nce established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013).

9.    Plaintiff alleges that he "is, and at all times mentioned herein was, a competent adult residing in the State of California." Compl. ¶ 8.  Accordingly, Plaintiff was and is domiciled in the State of California and is therefore a citizen of California for purposes of diversity jurisdiction.

### 2.    The Corporate Defendants Are Not Citizens of California.

10.    For diversity purposes, a corporation is a citizen of any state in which it has been incorporated and of any state where it has its principal place of business.  28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" is "the place where a corporation's officers direct,

control, and coordinate the corporation's activities." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  Normally, this is "the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'"  *Id.* at 93.  "[A] limited liability company 'is a citizen of every state of which its owners/members are citizens.'"  *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (citation omitted).

          a.      **Zimmer US, Inc.; Zimmer Biomet Holdings, Inc.; Biomet Biologics, LLC; and Biomet U.S. Reconstruction, LLC Are Citizens of Delaware and Indiana.**

11.     Zimmer US, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business in Warsaw, Indiana.  *See* Compl. ¶ 10; IN Sec. of St. Bus. Inf. for Zimmer US, Inc., attached as Exhibit B.

12.     Zimmer Biomet Holdings, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business in Warsaw, Indiana.  *See* IN Sec. of St. Bus. Inf. for Zimmer Biomet Holdings, Inc., attached as Exhibit C.

13.     Biomet Biologics, LLC is a limited liability company formed under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana.  The sole member of Biomet Biologics, LLC is Zimmer US, Inc., which is a citizen of Delaware and Indiana.  *See* IN Sec. of St. Bus. Inf. For Biomet Biologics, LLC, attached as Exhibit D.  Accordingly, Biomet Biologics, LLC is a citizen of Delaware and Indiana, the states of which its sole member is a citizen.

14.     Biomet U.S. Reconstruction, LLC is a limited liability company formed under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana.  The sole member of Biomet U.S. Reconstruction, LLC is Zimmer US, Inc., which is a citizen of Delaware and Indiana. *See* IN Sec. of St. Bus. Inf. For Biomet U.S. Reconstruction, LLC, attached as Exhibit E.

15.     Zimmer US, Inc.; Zimmer Biomet Holdings, Inc.; Biomet Biologics, LLC; and Biomet U.S. Reconstruction, LLC are therefore citizens of Delaware and Indiana for purposes of determining diversity jurisdiction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

**b.     Biomet, Inc. Is a Citizen of Indiana.**

16.     Biomet, Inc. is incorporated under the laws of the State of Indiana, with its principal place of business in Warsaw, Indiana. *See* Compl. ¶ 13; IN Sec. of St. Bus. Inf. for Biomet, Inc., attached as Exhibit F.

17.     Biomet, Inc. is therefore a citizen of Indiana for purposes of determining diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

**3.     Defendant Donald Quigley Is a "Sham" Defendant and His Citizenship Is Not Considered for Diversity of Citizenship Purposes.**

18.     Under 28 U.S.C. § 1441(b), actions are removable if, "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Plaintiff has attempted to avoid removal based upon diversity of citizenship jurisdiction by improperly naming his former supervisor and manager, Donald Quigley, as an individual defendant.

19.     Quigley's citizenship should be disregarded because he was improperly and fraudulently joined in this action to defeat diversity jurisdiction. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). As the Court of Appeals for the Ninth Circuit has instructed, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id.* The proper inquiry in determining whether a party has been fraudulently joined is "whether the plaintiff truly had a cause of action against the alleged sham defendants," not merely whether a nominal cause of action has been stated. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318–19 (9th Cir. 1998) (citations omitted). "The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent" in order to determine "whether the plaintiff truly ha[s] a cause of action against the alleged sham defendants." *Id.* at 1318.

20.     Plaintiff asserts claims against Quigley for unlawful retaliation, Cal. Lab. Code § 1102.5(b) (Count I); intentional infliction of emotional distress (IIED) (Count V); and intentional misrepresentation (Count VIII). But because Plaintiff's failure to state a claim against Quigley on

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4     ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

any of these counts is obvious according to settled California law, the Court should dismiss Quigley as a defendant.

### a. California Labor Code § 1102.5(b) Does Not Impose Personal Liability on Individual Managers and Supervisors.

21. Plaintiff's claim against Quigley for unlawful retaliation under California Labor Code § 1102.5(b) fails under settled California law because § 1102.5(b) "does not impose individual liability on supervisors." *Mewawalla v. Middleman*, No. 21-CV-09700-EMC, 2022 WL 1304474, at *20 (N.D. Cal. May 2, 2022) (collecting cases). Indeed, while § 1102.5(b) provides than "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee," § 1102.5(b), courts in the Ninth Circuit consistently interpret this section as precluding individual liability because it lacks clear language that "an employee of an entity . . . is personally liable." *Mewawalla*, 2022 WL 1304474, at *20 (citation omitted); *accord, e.g.*, *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1030 (S.D. Cal. 2017) (same); *Tillery v. Lollis*, No. 1:14-CV-02025-KJM, 2015 WL 4873111, at *10 (E.D. Cal. Aug. 13, 2015) ("[I]ndividuals are not susceptible to liability under [§] 1102.5.").

22. Furthermore, California Labor Code § 1104 expressly provides that "[i]n all prosecutions under this chapter, the employer is responsible for the acts of his managers, officers, agents, and employees." Cal. Lab. Code § 1104; *see Conner v. Aviation Servs. of Chevron U.S.A.*, No. 14-CV-02102-JD, 2014 WL 5768727, at *5 (N.D. Cal. Nov. 5, 2014) (dismissing § 1102.5(b) claim, relying on § 1104 and reasoning plaintiffs had "failed to point to any authority that establishes that individual liability exists for violations of [§] 1102.5 despite this statutory language"). As a result, only the Zimmer Defendants can be held liable under § 1102.5(b) for Quigley's alleged conduct.

23. When interpreting similar statutory language to § 1102.5(b), the California Supreme Court observed that "by the inclusion of the 'agent' language"—"an employer . . . or any other person"—"the Legislature intended only to ensure that *employers* will be held liable if their supervisory employees take actions later found discriminatory, and that *employers* cannot avoid liability by arguing that a supervisor failed to follow instructions or deviated from the employer's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

policy." *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998) (emphasis in original) (analyzing language in the California Fair Employment and Housing Act prohibiting "an employer . . . or any other person" from harassing an employee); *accord Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1173 (2008) (following *Reno* and holding that "the employer is liable for retaliation under" the California Fair Employment and Housing Act, "but nonemployer individuals are not personally liable for their role in that retaliation").

24.     In support of his unlawful retaliation claim, Plaintiff alleges that his manager and supervisor, Quigley, manipulated Plaintiff's sales territories, excluded him from business opportunities, "created a 'slush fund' accumulated when departing sales members' commissions were kept instead of being paid out as promised by DEFENDANTS to team members including PLAINTIFF," and improperly structured team members in Plaintiff's sales territory such that those Quigley favored received lucrative compensation and business opportunities.  Compl. ¶¶ 29–30.

25.     Because all federal courts to have interpreted § 1102.5(b), and California state courts interpreting similar statutory language agree that § 1102.5(b) does not impose personal liability on individual defendants, it is obvious under well settled law that Plaintiff cannot maintain this claim against Quigley.

### b.     California Workers' Compensation Preempts Plaintiff's IIED Claim.

26.     To recover for IIED under California law, a plaintiff must establish "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citation omitted).

27.     A defendant's actions must be shown to be "so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 n.5 (1970) ("vituperative language or vindictive conduct" must be shown).  To avoid dismissal, a "plaintiff must allege with 'great [] specificity' the acts which he or she believes are so extreme as to exceed all bounds of that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

usually tolerated in a civilized community." *Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*, 222 Cal. App. 4th 819, 832 (2013) (alteration in original) (citation omitted).  Actions that merely breach common standards of civility are insufficient.  *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1129 (1989) (holding employer's alleged conduct and discriminatory remarks, while offensive and in breach of common standards of civility, were not so egregious as to give rise to an actionable claim).

28.    Under California law, however, workers' compensation provides the exclusive remedy for an IIED claim that is based solely on alleged personnel activity.  *See* Cal. Lab. Code § 3601(a) ("Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment . . . .").  Indeed, "when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161 (2014) (citation omitted).

29.    Plaintiff alleges that Quigley's manipulation of Plaintiff's sales territories, exclusion of Plaintiff from business opportunities, creation of "a 'slush fund' accumulated when departing sales members' commissions were kept instead of being paid out as promised," and improper structuring of team members in Plaintiff's sales territory so that those Quigley favored received lucrative compensation and business opportunities were "outrageous[]" actions taken "with the intention to cause, or with reckless disregard of the probability of causing, PLAINTIFF severe emotional distress and bodily injury."  Compl. ¶¶ 29–30, 105.  But such allegations are nothing more than "[a] simple pleading of personnel management activity," which are "insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

30.    Even if Plaintiff's allegations against Quigley did constitute "outrageous conduct," such conduct "occurred at the worksite, in the normal course of the employer-employee relationship," so "workers' compensation is [Plaintiff's] exclusive remedy for any injury that may have resulted." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 902 (2008).  The only actions Plaintiff has alleged against Quigley in support of his IIED claim are personnel management activity allegedly causing him emotional harm.

31.    As a result, Plaintiff's claim "for intentional infliction of emotional distress [is] barred by the workers' compensation exclusive remedy provisions." *Id.* at 903; *see also Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) (holding "kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship," and "[e]ven if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions").

32.    Because it is well-settled in California that Plaintiff's allegations against Quigley cannot be considered "outrageous" and "extreme" conduct and because Plaintiff's claim is barred by workers' compensation exclusive remedy provisions, Plaintiff's IIED claim fails.  *See, e.g.*, *Pineda v. Abbott Lab'ys, Inc.*, No. 218CV03395SVWRAO, 2018 WL 3487111, at *4 (C.D. Cal. July 18, 2018) (holding manager was sham defendant since allegations of personnel management activity could not support IIED claim), *aff'd*, 831 F. App'x 238 (9th Cir. 2020); *Cocchi v. Cir. City Stores, Inc.*, No. C-05-1347 JCS, 2005 WL 8162914, at *6 (N.D. Cal. July 15, 2005) (holding supervisor was sham defendant where supervisor's statements about plaintiff's termination were "not the sort of allegations California courts have found to constitute 'outrageous' conduct that is outside of the normal employment relationship" to support IIED claim).

        **c.    Plaintiff Fails to Allege Detrimental Reliance to State an Intentional Misrepresentation Claim Separate from His Wrongful Termination Claim.**

33.    Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations," *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

34.    "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (alteration and emphasis in original) (citation omitted).

35.    Under California law, to state a claim for intentional misrepresentation, a plaintiff must plead "(a) misrepresentation . . . ; (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Lazar v. Superior Court*, 12 Cal. 4th 631, 632 (1996) (citation omitted).

36.    In support of his intentional misrepresentation claim, Plaintiff alleges that Quigley, "promised multiple times that PLAINTIFF would be paid the commissions he earned through the 'slush fund,'"; promised that Plaintiff "would be properly paid and receive a reasonable territory," and "repeatedly instructed PLAINTIFF to just be patient and keep working under the expectation that the payments would be forthcoming."  Compl. ¶ 42.

37.    Plaintiff claims that he relied on these promises by continuing to work for Defendants. *Id.* ¶ 45.  Plaintiff alleges that he was harmed by these promises by (1) "working for compensation for less than he could have earned at another company and less than what he actually earned"; (2) "not receiving the promised territory"; and (3) "not receiving the earned commissions." *Id.* ¶ 137.  However, Plaintiff also alleges that when he made requests to Quigley regarding another employee, Quigley "would do the opposite of what PLAINTIFF requested in an attempt to force him to quit." *Id.* ¶ 36.

38.    Plaintiff alleges that "[a]fter multiple instances of DEFENDANTS refusing to pay him rightfully due and owing compensation, not accounting for the 'slush fund', not providing a reasonable territory, continuing to interfere with PLAINTIFF's business opportunities, and not explaining the method of how commissions would be calculated moving forward after the sales representatives were properly classified as employees, PLAINTIFF was terminated or constructively terminated by DEFENDANTS on or about December 30, 2021." *Id.* ¶ 53.

39.    Plaintiff's intentional misrepresentation claim falls squarely within the intersection

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

of two longstanding California Supreme Court cases—*Hunter v. Up-Right, Inc.* and *Lazar v. Superior Court*—which together foreclose his claim. In *Hunter v. Up-Right, Inc.*, the California Supreme Court held that "wrongful termination of employment does not give rise to a cause of action for fraud or deceit, even if some misrepresentation is made in the course of the employee's dismissal." 6 Cal. 4th 1174, 1178 (1993). Rather, "[t]ort recovery is available only if the plaintiff can establish all of the elements of fraud with respect to a misrepresentation that is separate from the termination of the employment contract, i.e., when the plaintiff's fraud damages cannot be said to result from termination itself." *Id.*

40.    Thereafter, in *Lazar v. Superior Court*, the California Supreme Court clarified the rule in *Hunter*, explaining that the plaintiff in *Hunter* "could not be said to have relied *to his detriment* on his employer's misrepresentation, because his employer 'simply employed a falsehood to do what it otherwise could have accomplished directly.'" 12 Cal. 4th 631, 642 (1996) (quoting *Hunter*, 6 Cal. 4th at 1184). By contrast, the *Lazar* plaintiff's reliance was truly detrimental because defendant's "misrepresentations were made before the employment relationship was formed, when [defendant] had no coercive power over [plaintiff]" and plaintiff's "decision to join [defendant's company] left [plaintiff] in worse circumstances than those in which he would have found himself if [defendant] had not lied to him." *Id.* at 643.

41.    Read together, *Hunter* and *Lazar* establish that Plaintiff's allegations cannot possibly give rise to an intentional misrepresentation claim because Plaintiff did not alter his position and rely to his detriment on Quigley's alleged misrepresentation or suffer any fraud damages separate from his constructive termination. In *Lazar*, plaintiff's claim survived demurrer because he relied on defendant's misrepresentations "in leaving secure New York employment, severing his connections with the New York employment market, uprooting his family, purchasing a California home and moving here." 12 Cal. 4th at 639.

42.    Plaintiff here has not alleged any detrimental reliance. Rather, Plaintiff's only allegation regarding reliance is that he continued to work in the same position. Compl. ¶ 43. But at the same time, Plaintiff alleges that Quigley would do the opposite of what Plaintiff requested to force him to quit. *Id.* ¶ 36. Plaintiff did in fact quit, alleging that he was constructively terminated.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10                  ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

*Id.* ¶ 53. This does not follow.

43.    At best, Plaintiff seems to allege that had he known that Quigley's representations were false, he would have quit sooner. But "Plaintiff has failed to allege the type of reliance and resulting damages contemplated by California case law concerning deceit, including *Lazar*." *See Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1067 (C.D. Cal. 2005) (holding deceit claim failed where plaintiff alleged only that he failed to file a lawsuit sooner in reliance on employer's misrepresentation). Plaintiff therefore has not pleaded detrimental reliance or damages that are distinct from his alleged constructive termination and thus has no possibility of relief under settled California law. *See, e.g.*, *Caldwell v. OS Rest. Servs., LLC*, No. EDCV1900754DMGMRWX, 2021 WL 3264306, at *10 (C.D. Cal. May 13, 2021) (holding plaintiff could not maintain fraud claim based on employer's false promises to induce her to keep working for defendant where plaintiff did not allege any damages from defendant's statements other than her termination); *Maffei v. Allstate Cal. Ins. Co.*, 412 F. Supp. 2d 1049, 1056 (E.D. Cal. 2006) (plaintiffs "failed to state a claim for fraud because they have not alleged detrimental reliance or damages distinct from the termination itself"); *Kacludis v. GTE Sprint Commc'ns Corp.*, 806 F. Supp. 866, 871 (N.D. Cal. 1992) (dismissing intentional misrepresentation claim because "[a]ny damages alleged are the result of termination, not of any action or forbearance to act in reliance upon fraudulent statements").

44.    Accordingly, because Plaintiff's allegations do not—and could not possibly—support a claim of intentional misrepresentation, Quigley is a sham defendant. *See Ramirez v. Little Caesars Enters., Inc*, No. 2:18-CV-07993-AB-JPR, 2018 WL 5816107, at *9 (C.D. Cal. Nov. 2, 2018) (holding individual was sham defendant and misrepresentation claim insufficiently pleaded where "the complaint fail[ed] to plead facts showing justifiable reliance and resulting damages because it does not plead that Plaintiff could have and would have worked elsewhere but for the Individual Defendants alleged misrepresentation").

**4.    The Citizenship of "Doe" Defendants Is Not Considered for Diversity Jurisdiction Purposes.**

45.    Under 28 U.S.C. § 1441(b), the citizenship of defendants sued under fictitious names is disregarded. The inclusion of "Doe" defendants in Plaintiff's state court complaint has no effect

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

on removability. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690–91 (9th Cir. 1998) (instructing that for purposes of removal, the citizenship of defendants sued under fictitious names is disregarded). In determining whether diversity of citizenship exists, only the named defendants are considered.

46.     Accordingly, complete diversity exists because Plaintiff is a citizen of California, none of the Zimmer Defendants are citizens of California, and Quigley's citizenship is not considered because he is a "sham" defendant.

**B.      The Amount in Controversy Exceeds $75,000.**

47.     When federal jurisdiction is based on diversity of citizenship, "the matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In determining whether the jurisdictional minimum is met, courts consider all alleged recoverable damages, including lost wages, emotional distress damages, punitive damages, statutory penalties, and attorneys' fees. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347–48 (1977) (superseded by statute on other grounds); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998).

48.     And "the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018).

49.     Plaintiff alleges that because of his deprivation of compensation, his "income dwindled from having a monthly income between $15,000 and $22,000 per month in 2017 to less than $7,000 per month in 2021." Compl. ¶ 30. Calculating only the difference between income of $15,000 and $7,000 per month from 2017 through Plaintiff's alleged constructive termination in December 2021, Plaintiff's alleged damages exceed $400,000.

50.     However, Plaintiff also seeks (1) all unpaid wages and any and all consequential damages flowing from them; (2) all damages under the applicable Labor Code sections; (3) restitutionary disgorgement under the California Uniform Competition Law; (4) reasonable attorneys' fees; (5) general, special, and consequential damages; and (6) exemplary and punitive

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

damages for malice, fraud, and oppression.  Compl., Prayer for Relief.  Accordingly, from the face of the Complaint, the amount in controversy exceeds the statutory minimum of $75,000.

## III.    THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

51.    Because this Notice of Removal is filed within thirty days of service of the Complaint upon Zimmer US, Inc., it is timely under 28 U.S.C. § 1446(b).

52.    No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

53.    As noted above, Plaintiff has not served Zimmer Biomet Holdings, Inc.; Biomet U.S. Reconstruction, LLC; Biomet Biologics, LLC; and Biomet, Inc. with the Summons and Complaint in this matter.

54.    Plaintiff also has not yet served Donald Quigley with the Summons and Complaint in this matter, or with a Notice of Acknowledgement of Service of Summons.  As a result, Zimmer US, Inc. is not required to obtain the consent of Zimmer Biomet Holdings, Inc.; Biomet U.S. Reconstruction, LLC; Biomet Biologics, LLC; Biomet, Inc.; or Quigley in order to remove this action to federal court.  *See Destfino v. Reiswig*, 630 F.3d 952, 955 (9th Cir. 2011) (co-defendants not properly served need not join).

55.    Furthermore, because Quigley is a "sham" defendant, the Zimmer Defendants are not required to obtain his consent. *See Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564–65 (6th Cir. 2015); *Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991) (joinder in the notice of removal is not required by persons named as defendants solely to prevent removal).

56.    This action was originally filed in the Superior Court of California, County of Marin. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

57.    Zimmer US, Inc. will provide this Notice of Removal to Plaintiff and will promptly file a copy of this Notice of Removal with the clerk of the Superior Court of California, County of Marin, as required under 28 U.S.C. § 1446(d).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13                    ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

## IV.  **CONCLUSION**

Based on the foregoing, Zimmer US, Inc. requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Zimmer US, Inc. respectfully requests the opportunity to present a brief and oral argument in support of their position that this case is subject to removal.

Dated: June 10, 2022                                 MORGAN, LEWIS & BOCKIUS LLP


                                                    By */s/ Eric Meckley*
                                                    _____
                                                    Eric Meckley
                                                    Roshni C. Kapoor
                                                    Attorneys for Defendant
                                                    ZIMMER US, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

ZIMMER US, INC.'S NOTICE OF REMOVAL
[28 U.S.C. §§ 1332, 1441, AND 1446]

# Exhibit A



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 24936241**
**Date Processed: 05/18/2022**

| | |
|---|---|
| **Primary Contact:** | Byron Hayes<br>Zimmer Holdings, Inc.<br>345 E Main St<br>Warsaw, IN 46580-2746 |
| **Electronic copy provided to:** | Chad Phipps<br>Tina McCoy<br>Justin Kashman<br>Myka Fernandez<br>Maureen Smith<br>Dona Reust<br>Lisa Dunkin |

| | |
|---|---|
| **Entity:** | Zimmer US, Inc.<br>Entity ID Number  2451858 |
| **Entity Served:** | Zimmer US, Inc. |
| **Title of Action:** | James Karl vs. Zimmer Biomet Holdings, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Wrongful Termination |
| **Court/Agency:** | Marin County Superior Court, CA |
| **Case/Reference No:** | CIV2201089 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 05/13/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Jaret & Jaret<br>415-455-1010 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** ZIMMER BIOMET HOLDINGS, INC., a business
**(AVISO AL DEMANDADO):** entity; ZIMMER US, INC., a Delaware corporation;
BIOMET U.S. RECONSTRUCTION, LLC, a business entity; BIOMET
BIOLOGICS, LLC, a business entity; BIOMET, INC., an Indiana corporation;
Additional Parties Attachment form is attached.
**YOU ARE BEING SUED BY PLAINTIFF:** JAMES KARL, an individual
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)



FILED

APR 18 2022

JAMES M. KIM
COURT EXECUTIVE OFFICER
MARIN CO. SUPERIOR COURT
BY: N. JOHNSON

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Marin
3501 Civic Center Drive
San Rafael, California 94903

CASE NUMBER:
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: ROBERT S. JARET, ESQ.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JARET & JARET
1016 Lincoln Avenue, San Rafael, CA 94901

| DATE: | JAMES M. KIM | | |
|---|---|---|---|
| (Fecha) APR 18 2022 | Clerk, by | N. JOHNSON | , Deputy |
| | (Secretario) | | (Adjunto) |

415-455-1010

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

(SEAL)

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* ZIMMER US, INC., a Delaware corporation

under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
Westlaw Doc & Form Builder™

**SUM-200(A)**

| SHORT TITLE: KARL v. ZIMMER BIOMET HOLDINGS, INC., ET A L. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

DONALD QUIGLEY, an individual; and DOES 1 through 50, inclusive

Page __1__ of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name,* Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| ROBERT S. JARET, ESQ.   SBN: 124876<br>JARET & JARET<br>1016 Lincoln Avenue, San Rafael, CA 94901<br>TELEPHONE NO.: 415-455-1010   FAX NO. *(Optional):* 415-455-1050<br>E-MAIL ADDRESS: rjaret@jaretlaw.com<br>ATTORNEY FOR *(Name):* James Karl | RECEIVED<br><br>APR 18 2022<br><br>MARIN COUNTY<br>SUPERIOR COURT |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN
STREET ADDRESS: 3501 Civic Center Drive
MAILING ADDRESS: 3501 Civic Center Drive
CITY AND ZIP CODE: San Rafael, 94903
BRANCH NAME: Marin County Superior Court

CASE NAME: JAMES KARL v. ZIMMER BIOMET HOLDINGS, INC., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CIV2201089 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount demanded exceeds $25,000) | [ ] Limited<br>(Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [X] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive

4. Number of causes of action *(specify):* Eight (8)

5. This case [ ] is   [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 18, 2022

ROBERT S. JARET, ESQ.
_____
(TYPE OR PRINT NAME)                                   ► _____
                                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev September 1, 2021]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

PHILLIP A. JARET, ESQ. [SBN 092212]
ROBERT S. JARET, ESQ. [SBN 124876]
JARET & JARET
1016 Lincoln Avenue
San Rafael, California 94901
Telephone: (415) 455-1010
Facsimile: (415) 455-1050

Attorneys for Plaintiff JAMES KARL

FILED

APR 18 2022

┌─────────────────────────┐
│ ...........MARIN         │
│ ......... EXECUTIVE OFFICER │
│ MARIN CO. SUPERIOR COURT │
│ BY:___ N. JOHNSON        │
└─────────────────────────┘

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF MARIN

CIVIL UNLIMITED JURISDICTION

| | |
|---|---|
| JAMES KARL, an individual, | No. CIV2201089 |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:** |
| v. | |
| ZIMMER BIOMET HOLDINGS, INC., a business entity; ZIMMER US, INC., a Delaware corporation; BIOMET U.S. RECONSTRUCTION, LLC, a business entity; BIOMET BIOLOGICS, LLC, a business entity; BIOMET, INC., an Indiana corporation; DONALD QUIGLEY, an individual; and DOES 1 through 50, inclusive, | **1. UNLAWFUL RETALIATION;**<br>**2. FAILURE TO PAY WAGES DUE AND OWING DURING EMPLOYMENT;**<br>**3. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**<br>**4. UNFAIR/UNLAWFUL COMPETITION LAWS;**<br>**5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** |
| Defendants. | **6. RETALIATION FOR FILING EMPLOYEE SAFETY COMPLAINT;**<br>**7. NEGLIGENT MISREPRESENTATION; AND**<br>**8. INTENTIONAL MISREPRESENTATION** |

PLEASE TAKE NOTICE, PLAINTIFF, JAMES KARL, hereby complains against Defendants ZIMMER BIOMET HOLDINGS, INC.; ZIMMER US, INC.; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET BIOLOGICS, LLC; BIOMET, INC.; DONALD QUIGLEY; and DOES 1 through 50, inclusive, and each of them, and alleges as follows:

///

///

1

## I.   GENERAL ALLEGATIONS

1.   In 2014, the California Department of Industrial Relations (DIR) and the Department of Labor Standards Enforcement (DLSE) initiated a campaign, entitled "Wage Theft is a Crime," in pursuit of its "mission [...] to protect California's workers with comprehensive labor laws and enforcement focused on businesses that intentionally skirt the law."

2.   Each year millions of workers across the country are victims of wage theft – meaning they are paid less than the full wages to which they are legally entitled. Between 2017 and 2020, more than $3 billion in stolen wages was recovered on behalf of workers by the U.S. Department of Labor, state departments of labor, and attorneys general, and through class action and collective action litigation.

3.   Moreover, public policy in California has long favored the full and prompt payment of wages due to an employee.

4.   PLAINTIFF KARL brings this action to redress the unlawful retaliation he has experienced in response to his efforts at protecting employee rights. PLAINTIFF was named as the "class representative" in a class action lawsuit filed in the U.S. District Court Northern District of California, Case Number 18-cv-4176-WHA against the defendants in the present action. The class action was brought on behalf of PLAINTIFF KARL and other similarly situated sales representatives of medical devices who worked for the same business entity DEFENDANTS in this action. The class-action alleged that the sales representatives were "misclassified" as "independent contractors" when they should have been classified as "employees", depriving them of various employee benefits. The class action was settled after nearly 3 years of hard-fought litigation that included three appeals to the California State Court of Appeals and one attempted appeal to the California Supreme Court. The class action settlement was approved by the trial court on March 4, 2022, providing for a $7.3 million fund to compensate the class of sales representatives.

5.   DEFENDANTS in the action herein retaliated against PLAINTIFF for participating in the protected activities related to the enforcement of California Labor Code provisions

2

COMPLAINT

prosecuted in the class action. The retaliation included DEFENDANTS' representatives telling PLAINTIFF they wanted PLAINTIFF "gone" because of the class action, and when he did not quit, then promising PLAINTIFF a lucrative sales territory if the class action lawsuit would "go away", i.e. be dismissed. When PLAINTIFF refused to drop the lawsuit, DEFENDANTS manipulated the sales territory and excluded PLAINTIFF from business development opportunities in an effort to force PLAINTIFF to quit. DEFENDANTS failed to pay to PLAINTIFF wages he earned by creating a "slush fund" that was comprised of commissions owed to PLAINTIFF and other sales representatives, but withheld by DEFENDANTS. Due to the retaliation and theft of wages PLAINTIFF's income was dwindling to the point where it was cut in half. When the business entity Defendants converted the sales representatives from "independent contractors" to "employees" as required by the class action settlement, PLAINTIFF was not provided with any accounting of the "slush fund" and was not provided with the method by which commissions would be computed and paid, in violation of California Labor Code §2751 ("Contract of employment and method of payment involves commissions"). PLAINTIFF was not converted from an independent contractor to an employee by DEFENDANTS and therefore he was terminated, or constructively terminated, on or about December 30, 2021.

6. PLAINTIFF's retaliation and wage claims do not overlap or in any way conflict with the claims identified in the class-action notice or settlement. The present lawsuit does not include claims including or related to the issue of misclassifying employees as independent contractors.

7. PLAINTIFF brings this action seeking reimbursement, restitution, injunctive and other equitable relief, reasonable attorneys' fees, and costs.

## II. THE PARTIES

8. PLAINTIFF is, and at all times mentioned herein was, a competent adult residing in the State of California.

9. DEFENDANT ZIMMER BIOMET HOLDINGS, INC., is a business entity conducting business within the State of California and County of Marin, and was at all times

3

relevant herein part of an integrated enterprise with the other business entity Defendants and the employer or joint employer of PLAINTIFF.

10. DEFENDANT ZIMMER US, INC. is a Delaware corporation conducting business within the State of California and County of Marin, and was at all times relevant herein part of an integrated enterprise with the other business entity Defendants and the employer or joint employer of PLAINTIFF.

11. DEFENDANT BIOMET U.S. RECONSTRUCTION, LLC is a business entity conducting business within the State of California and County of Marin, and was at all times relevant herein part of an integrated enterprise with the other business entity Defendants and the employer or joint employer of PLAINTIFF.

12. DEFENDANT BIOMET BIOLOGICS, LLC, is a business entity conducting business within the State of California and County of Marin, and was at all times relevant herein part of an integrated enterprise with the other business entity Defendants and the employer or joint employer of PLAINTIFF.

13. DEFENDANT BIOMET, INC. is an Indiana corporation conducting business within the State of California and County of Marin , and was at all times relevant herein part of an integrated enterprise with the other business entity Defendants and the employer or joint employer of PLAINTIFF.

14. DEFENDANT DONALD QUIGLEY is an individual who resides in the State of California, and was at all times relevant herein was employed by the business entity Defendants and the manager, and supervisor of PLAINTIFF.

15. The business entity Defendants purposely availed themselves of business opportunities by conducting business within the State of California and County of Marin.

16. Because all tortious conduct occurred while PLAINTIFF worked for the Defendant business entities out of his home office within the City of Novato, County of Marin, and witnesses reside therein, venue properly lies with this Court.

17. PLAINTIFF is informed and believes, and based thereon alleges, that DOES 1-50 were, at all times relevant herein, the owner, shareholder, sole proprietor, superintendent,

4

COMPLAINT

officer, director, manager, and managing agent of DEFENDANTS ZIMMER BIOMET HOLDINGS, INC, ZIMMER US, INC., BIOMET U.S. RECONSTRUCTION, LLC, BIOMET BIOLOGICS, LLC, and BIOMET, INC. collectively referred to as the "business entity Defendants".

18.    DEFENDANTS collectively are subject to Labor Code and other California laws including, but not limited to, Cal. Bus. & Prof. Code sections 17200, et seq., and the applicable Wage Order(s) issued by the Industrial Welfare Commission.

19.    At all times herein mentioned, DOES 1-50 participated in the doing of the acts and omissions herein alleged, were acting within the purpose, course and scope of said agency and/or employment to have been done by the named DEFENDANTS. Further, DOES 1-50, and each of them, were the agents, managing agents, servants, employees, alter-egos, co-conspirators, joint-ventures, partners, successors in interest, and predecessors in interest of each of the other DEFENDANTS.

20.    At all times herein mentioned, all DEFENDANTS were acting within the purpose, course and scope of said agency and/or employment so as to invoke vicarious liability and respondeat superior liability among other theories of liability to hold DEFENDANTS liable and responsible for the injuries and damages to PLAINTIFF.

21.    At all times herein mentioned, all DEFENDANTS were members of and engaged in a joint venture, partnership, and common enterprise, and acting within the purpose, course and scope of, and in pursuit of, said joint venture, partnership, and common enterprise.

22.    At all times herein mentioned, the acts and omissions of various all DEFENDANTS contributed to the various acts and omissions of each and all of the other DEFENDANTS in proximately causing the injuries and damages as herein alleged.

23.    At all times herein mentioned, DEFENDANTS, including all managing agents, officers, and directors, had advanced knowledge of and/or ratified each and every act or omission complained throughout this Complaint.

24.    At all times relevant herein, DEFENDANTS and/or their managing agents, officers or directors committed and/or participated in the wrongful acts and omissions

5

COMPLAINT

complained of throughout this Complaint or ratified such acts and omissions. At all times herein mentioned, DEFENDANTS aided and abetted the acts and omissions of each and all of the other DEFENDANTS in proximately causing the damages as herein alleged.

25. PLAINTIFF is informed and believes and thereon alleges that at all times herein mentioned DEFENDANTS and DOES 1 through 50, are and were individuals, sole proprietorships, corporations, business entities, persons, and partnerships, licensed to do business and/or actually doing business in the State of California.

26. The true names and capacities, whether individual, corporate, associate, or otherwise of the DEFENDANTS named herein as DOES 1 through 50, are unknown to PLAINTIFF at this time. PLAINTIFF, therefore, sues said DEFENDANTS by such fictitious names pursuant to § 474 of the California Code of Civil Procedure. PLAINTIFF will seek leave to amend the Complaint to allege the true names and capacities of DOES 1 through 50 when their names are ascertained. PLAINTIFF is informed and believes, and based thereon alleges, that each of the DOE DEFENDANTS is in some manner liable to PLAINTIFF for the events and actions alleged herein.

## III. FACTUAL ALLEGATIONS

27. At all times relevant, DEFENDANT DONALD QUIGLEY was a manager, supervisor, and managing agent of the business entity Defendants.

28. PLAINTIFF began working for the business entity Defendants in 2008. PLAINTIFF's compensation came in the way of earning commissions on the sale of medical devices including replacement products related to the hip, knee, and shoulder. PLAINTIFF's duties included "case coverage" by assisting surgeons in the operating room. This included setting up the products sold by the business entity Defendants, informing the surgeon of the product's safety and effectiveness, answering questions posed by surgeons, and planning for the surgical procedures by designing modifications for implants.

29. In retaliation for PLAINTIFF's protective activities, he was subjected to a series of adverse actions. This included DEFENDANT QUIGLEY's manipulation of sales territories, the exclusion from business opportunities, the creation of a "slush fund" accumulated when

departing sales members' commissions were kept instead of being paid out as promised by DEFENDANTS to team members including PLAINTIFF, and improper structuring of team members in PLAINTIFF's sales territory.

30. DEFENDANT QUIGLEY controlled the Bay Area sales territories and made decisions on how to compensate the sales representatives. For those that he favored, they received lucrative compensation packages. In contrast, PLAINTIFF was unlawfully deprived of compensation that he earned, and could have been earning. As a consequence, PLAINTIFF's income dwindled from having a monthly income between $15,000 and $22,000 per month in 2017 to less than $7,000 per month in 2021. PLAINTIFF could not afford to continue to endure this intolerable situation as he was unable to provide for his family's needs.

31. DEFENDANTS told PLAINTIFF if he dropped the lawsuit, he, too, could have a favorable deal, similar to that of another sales representative, Tyler Vance. One representative of DEFENDANTS, Jay-Tyler Blevins, Area Vice President stated that if the "lawsuit goes away," PLAINTIFF can have whatever territory he wants and can keep his key accounts. PLAINTIFF declined this offer which was a veiled threat. Another one of DEFENDANTS' representatives, Robert J. Hall, VP & Associate General Counsel, communicated that DEFENDANTS wanted PLAINTIFF "gone" because of the class action. This is direct evidence of unlawful retaliation and supports a claim under Labor Code §1102.5.

32. As a result of the retaliation, PLAINTIFF suffered an adverse employment action as defined by the applicable jury instruction:

> **2509. "Adverse Employment Action" Explained**
>
> Plaintiff must prove that he was subjected to an adverse employment action. Adverse employment actions are not limited to ultimate actions such as termination or demotion. There is an adverse employment action if [name of defendant] has taken an action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of [name of plaintiff]'s employment. An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion. However, minor or trivial actions or conduct that is not reasonably likely to do

///

7

COMPLAINT

more than anger or upset an employee cannot constitute an adverse employment action.

33.   DEFENDANT QUIGLEY failed to lawfully account for the commissions earned by sales team members. DEFENDANTS represented that all of the sales were to be pooled with each team member receiving a percentage of the pooled commissions. However, more than 12 team members quit or were terminated under DEFENDANT QUIGLEY's supervision and the monies earned by those workers were undisclosed. The commissions were not paid to the departing employees. The commissions were undistributed and went into what DEFENDANT QUIGLEY labeled his "slush fund." DEFENDANT QUIGLEY has represented that PLAINTIFF was entitled to 23% of his teams' commissions, but provided no accounting or data to confirm his calculations. There were no spreadsheets, audits, or any other document identifying the amount of income earned by the team members. This "slush fund" as coined by DEFENDANT QUIGLEY, is unlawful.

34.   DEFENDANT QUIGLEY worked directly for the business entity Defendants and controlled the Golden Gate, East Bay, and South Bay sales teams. In some months when team members left and PLAINTIFF complained that he was not receiving the proper amount of commissions and that DEFENDANT QUIGLEY did not want to disclose where the money was going, QUIGLEY he would add additional compensation to PLAINTIFF's monthly compensation without a specific explanation or accounting other than saying that PLAINTIFF would later receive these commissions in the form of bonuses at the end of the year. DEFENDANT QUIGLEY controlled the "slush fund."

35.   In retaliation for participating in protected activities, PLAINTIFF was excluded from business development meetings when other representatives had been invited. The most egregious example of this was intentionally interfering with PLAINTIFF's business relationship with a local surgeon. DEFENDANT QUIGLEY cut PLAINTIFF out of a potentially lucrative business arrangement.

///

///

COMPLAINT

36. PLAINTIFF also complained to DEFENDANTS about an unsafe working environment due to the erratic and threatening behavior of a former employee, James Palmer. DEFENDANT QUIGLEY insisted on retaining Mr. Palmer and including him on PLAINTIFF's sales team even after PLAINTIFF provided evidence that Mr. Palmer was frightening physicians and coworkers by his erratic and hostile behavior and was not qualified to be on the team. On one occasion, Mr. Palmer abruptly left the operating room in the middle of a surgical procedure to the shock of the surgeon. Mr. Palmer was also driving the team revenue down because of his incompetence. Throughout all of this, DEFENDANT QUIGLEY chose to keep Mr. Palmer as the Team Lead for Team Golden Gate/ San Francisco. DEFENDANT QUIGLEY even inserted Mr. Palmer into the negotiations with the above referenced local surgeon to cut PLAINTIFF out of the business opportunity. DEFENDANT QUIGLEY would do the opposite of what PLAINTIFF requested in an attempt to force him to quit. It was not until Mr. Palmer was arrested on January 27, 2021, for felony possession of "ghost guns" and drugs that he was fired.

37. DEFENDANT QUIGLEY refused to commit to an agreement regarding a territory for PLAINTIFF. This refusal was consistent with the explicit statement that if PLAINTIFF had dropped the lawsuit he could have a reasonable territory, but since PLAINTIFF did not drop the class action lawsuit, DEFENDANTS wanted him "gone". In contrast, another sales representative by the name of Tyler Vance who had not been subjected to retaliation was permitted to carve out whatever territory he wanted, and received 50% commission, even when it cut into other territories and diminished those sales representatives' earnings.

38. The evidence of retaliation is overwhelming, and the accumulation of the "slush fund" constitutes a theft of wages.

39. PLAINTIFF was retaliated against for engaging in protected activities. PLAINTIFF's protected activities included being the named plaintiff in the class-action lawsuit alleging unlawful "misclassification" as independent contractors as opposed to "employees" in violation of the California Labor Code, and California Industrial Wage Commission Wage Order 4-2001 (among other laws), which resulted in a settlement confirming that the sales

///

9

COMPLAINT

representatives were misclassified as independent contractors. As a result, DEFENDANTS were required to reclassify the sales representatives as "employees".

40. DEFENDANTS fought the class-action lawsuit denying that the sales representatives were misclassified as independent contractors. DEFENDANTS were angered by PLAINTIFF prosecuting the misclassification claims in the class-action lawsuit. That anger spilled over into unlawful retaliation against PLAINTIFF.

41. The above facts support PLAINTIFF's retaliation claims under California Labor Code §1102.5.

42. PLAINTIFF was also defrauded by DEFENDANTS. DEFENDANT QUIGLEY, on behalf of the business entity DEFENDANTS, promised multiple times that PLAINTIFF would be paid the commissions he earned through the "slush fund" and that PLAINTIFF would be properly paid and receive a reasonable territory. DEFENDANT QUIGLEY represented that the unpaid but earned commissions would be paid in the future. DEFENDANT QUIGLEY repeatedly instructed PLAINTIFF to just be patient and keep working under the expectation that the payments would be forthcoming, and that he would receive a reasonable sales territory.

43. PLAINTIFF alleges at the time of the promises that the "slush fund" distributions would be made in the future and that he would receive a reasonable sales territory, DEFENDANTS intended for PLAINTIFF to rely on these promises in exchange for him to continue working in the position for compensation less than what he could have earned elsewhere, and less than what he was entitled to as he had earned the commissions.

44. PLAINTIFF did, in fact, rely on the promises that the payments would be made in the future in exchange for his continuing to work in the position earning less than what he could have earned elsewhere and less than what he was entitled to as he had earned the commissions.

45. PLAINTIFF'S reliance on DEFENDANTS' promises by actually continuing to work under the promises was reasonable and justified at least in part by the fact that PLAINTIFF had received some payments.

///

10

COMPLAINT

46. Any reasonable person in PLAINTIFF's position would have found the reliance to be justified under the same circumstances.

47. PLAINTIFF alleges at the time that DEFENDANT QUIGLEY told PLAINTIFF that he would receive a reasonable territory, receive commissions owed to him including those that were part of the "slush fund", DEFENDANTS including QUIGLEY did not actually have the present intention to provide the reasonable territory and pay the promised commissions.

48. At all relevant times mentioned herein, PLAINTIFF met all conditions and criteria to earn the commissions complained of during his time of employment, which made them due and owing as wages in accordance with California law.

49. DEFENDANTS collectively have admitted that they acknowledge they owe PLAINTIFF commissions that he earned, and which were due and owing as of the date of his termination, or constructive termination on December 30, 2021, but DEFENDANTS failed and refused to pay them.

50. Specifically, on multiple occasions, DEFENDANT QUIGLEY acknowledged that he had accumulated a "slush fund" consisting of unpaid commissions but refused to ever provide an accounting so that PLAINTIFF could calculate what was specifically owed to him. This admission was confirmed by the fact that DEFENDANT QUIGLEY would pay additional monies from the "slush fund" on occasion to PLAINTIFF when he complained but there would be no disclosure or accounting of the amount of funds that were withheld and how much was truly due and owing to PLAINTIFF. DEFENDANT QUIGLEY said that he was compensating PLAINTIFF out of the "slush fund" and promised that the sales representatives would be paid these commissions as a year end bonus but that never occurred.

51. DEFENDANT QUIGLEY acknowledged on multiple occasions the existence of his "slush fund".

52. PLAINTIFF has been harmed by relying on all DEFENDANTS' promises above by 1) continued working for compensation that was less than what he earned 2) not receiving the accounting of the "slush fund", 3) loss of use and enjoyment of the monies to which he was entitled, and 4) not receiving a reasonable territory and instead being excluded from business

11

COMPLAINT

opportunities and also having business opportunities blocked and interfered with by DEFENDANTS.

53. After multiple instances of DEFENDANTS refusing to pay him rightfully due and owing compensation, not accounting for the "slush fund", not providing a reasonable territory, continuing to interfere with PLAINTIFF's business opportunities, and not explaining the method of how commissions would be calculated moving forward after the sales representatives were properly classified as employees, PLAINTIFF was terminated or constructively terminated by DEFENDANTS on or about December 30, 2021.

54. In violation of clear California law, DEFENDANTS failed to pay PLAINTIFF his wages in a timely manner during his employment.

55. Also in violation of clear California law, DEFENDANTS have still failed to pay PLAINTIFF his rightfully due and owing commissions.

56. By failing to pay his wages that he is rightfully owed, as they were due and owing during his employment, DEFENDANTS have also failed to account for the commissions that he was owed as wages during the time periods that they were, in fact, due and owing.

57. PLAINTIFF alleges that DEFENDANTS have at all times known of their obligations to pay PLAINTIFF his commissions as wages due and owing, but have intentionally and deliberately refused to pay them in violation of clear California laws.

58. As a direct and proximate result of all of the foregoing actions of DEFENDANTS, PLAINTIFF has suffered emotional distress and mental anguish, such as fear of an inability to financially care for his family, sadness, headaches, loss of sleep, nervousness, loss of sense of self-worth, despair, feelings of hopelessness, embarrassment, and shame.

59. Furthermore, as a direct and proximate result of the above unlawful actions, PLAINTIFF has suffered, and continues to suffer, loss of wages, expenses, loss of business opportunity, and loss of earnings in an amount yet ascertained, but subject to proof at trial in amounts in excess of the minimum jurisdiction of this Court.

60. PLAINTIFF alleges that DEFENDANTS have engaged in other illegal and wrongful acts, which are currently unknown to PLAINTIFF. Upon discovery of such acts, PLAINTIFF will

12

COMPLAINT

amend this complaint to allege these unknown illegal and wrongful acts and omissions committed by DEFENDANTS.

## FIRST CAUSE OF ACTION

### Unlawful Retaliation

### Labor Code § 1102.5 – CACI 4603

### (Against All DEFENDANTS)

61. PLAINTIFF repeats, re-alleges, and incorporates herein by reference the allegations in the foregoing paragraphs, as though fully set forth herein.

62. California Labor Code § 1102.5(b) provides, in pertinent part, "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." This statute reflects the broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation.

63. In 2003, the California State Legislature amended the Labor Code's whistleblower protections and added a procedural provision, Section 1102.6, which states:
In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5.

///

64. DEFENDANTS were employers for purposes of California law.

65. PLAINTIFF was an employee of DEFENDANTS, performing work on behalf of DEFENDANTS.

66. DEFENDANTS subjected PLAINTIFF to one or more of the following adverse employment actions: threatened with termination, not being paid earned commissions, interference with business opportunities, not being provided business opportunities given to other workers, forced to work with dangerous and incompetent workers, not provided an accounting of the "slush fund", not provided with a reasonable way to determine the method of calculating commissions, not provided with a reasonable territory, manipulating sales territories and commissions so that PLAINTIFF was earning significantly less than he had previously, blatantly making it clear that PLAINTIFF would not have a future working for DEFENDANTS, and terminating or constructively terminating PLAINTIFF's employment, among other things.

67. DEFENDANTS subjected PLAINTIFF to the foregoing adverse employment actions in retaliation for engaging in protected activities, including, but not limited to, participating as a class representative in the class action, disclosing violations of multiple provisions of the California Labor Code related to the proper payment of wages, as well as retaliation for reporting an unsafe working environment in violation of California Labor Code §§ 6400 and 6310.

68. In doing the things herein alleged, the acts and conduct of any individual DEFENDANT constituted "malice," "oppression" and/or "fraud" (as those terms are defined by Civ. Code §3294(c)), in that these acts were intended by the DEFENDANTS to cause injury to PLAINTIFF and/or constituted despicable conduct carried on by the DEFENDANTS with willful and conscious disregard of the rights of PLAINTIFF, with the intention of the DEFENDANTS to deprive PLAINTIFF of property and legal rights, and were authorized or approved by managing agents of the DEFENDANTS, justifying an award of exemplary and punitive damages in an amount according to proof, in order to deter the individual DEFENDANTS from similar conduct in the future, should be made.

///

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as hereinafter set forth.

### SECOND CAUSE OF ACTION

**Failure to Pay Wages Due and Owing During Employment**

Cal. Labor Code §§200, 204, 218.5, 218.6

**(Against Defendants ZIMMER BIOMET HOLDINGS, INC.,**

**ZIMMER US, INC., BIOMET U.S. RECONSTRUCTION, LLC,**

**BIOMET BIOLOGICS, LLC, and BIOMET, INC)**

69.   PLAINTIFF repeats, re-alleges, and incorporates herein by this reference the allegations in the foregoing paragraphs, as though fully set forth herein.

70.   Labor Code section 200(a) defines "Wages" to include "all amounts for labor performed by employees of every description, whether the amount is fixed by the standard of time, task, piece, commission basis, or other method of calculation." Lab. Code § 200(a). This includes commissions. *Neisendorf v. Levi Strauss 13 & Co.*, 143 Cal.App.4th 509 (2006).

71.   It is the employer's responsibility to ensure that all commission plans are in writing, signed by the employer, and a signed receipt thereof by the employee. Lab. C. § 2751.

72.   A commission is earned when the employee has perfected the right to payment; that is, when all the legal conditions precedent have been met. Such conditions precedent are a matter of contract between the employer and employee. PLAINTIFF's commissions are owed under the terms of his employment.

73.   All wages earned during employment must be paid in a timely manner in compliance with Labor Code § 204.

74.   Pursuant to Labor Code §§ 218.5 and 218.6, an action may be brought for the nonpayment of wages.

75.   Through the above-mentioned conduct, DEFENDANTS' failure to pay timely wages have caused injury to PLAINTIFF.

76.   Such conduct was willful or intentional within the meaning of Cal. Labor Code.

///

15

COMPLAINT

77. As a direct, foreseeable, and proximate result of DEFENDANTS' conduct as alleged above, PLAINTIFF has suffered and continues to suffer, substantial losses related to DEFENDANTS' failure to pay timely wages during employment resulting in loss of use and enjoyment of compensation, loss of wages, loss of business opportunity, lost interest on such monies and expenses and attorney's fees in seeking to compel DEFENDANTS to fully perform their obligation under state law, all to PLAINTIFF's damage in amounts according to proof at trial and within the jurisdictional limitations of the Court.

78. For DEFENDANTS' misconduct as alleged herein, PLAINTIFF seeks all damage, costs, and attorneys' fees, including but not limited to those available pursuant to Labor Code §§ 218.5/218.6, in an amount to be proven at trial.

79. To the extent that any violations of the above cause of action are based upon the conduct of executives, managers, and supervisors, DEFENDANTS knew about such conduct and ratified such conduct and did so with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as hereinafter set forth.

### THIRD CAUSE OF ACTION

**Wrongful Termination in Violation of Public Policy**

**(Against DEFENDANTS ZIMMER BIOMET HOLDINGS, INC.,**

**ZIMMER US, INC., BIOMET U.S. RECONSTRUCTION, LLC, BIOMET**

**BIOLOGICS, LLC, and BIOMET, INC)**

80. PLAINTIFF repeats, re-alleges, and incorporates herein by this reference the allegations in the foregoing paragraphs, as though fully set forth herein.

81. "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation." *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251.

16

82. California Labor Code recognizes a fundamental public policy interest in all employees timely receiving all wages due and owing. PLAINTIFF was also retaliated against for complaining about unsafe working conditions in violation of Labor Code §§ 6310 and 6400.

83. PLAINTIFF was employed by DEFENDANTS. DEFENDANTS have engaged in a regular and repeated pattern of unlawful pay practices. PLAINTIFF was subjected to working conditions that violated public policy. DEFENDANTS intentionally created or knowingly permitted these working conditions, which were a substantial factor in causing harm.

84. A reasonable person would not be expected to continue working under such unlawful and intolerable conditions, which means to the extent that PLAINTIFF was not terminated by DEFENDANT's, PLAINTIFF'S resignation was a constructive termination. To the extent that PLAINTIFF resigned, he did so because of these working conditions.

85. DEFENDANTS' conduct towards PLAINTIFF constitutes a wrongful termination or wrongful constructive termination in violation of public policy, deserving of all remedies to protect the public from similar wrongs, including but not limited to economic damages, emotional distress damages, and loss of use damages.

86. As a direct, foreseeable, and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered, and continues to suffer, emotional distress, losses in salary, wages, job benefits, health insurance, and other employment benefits that he would have received from DEFENDANTS, plus expenses for not being regularly employed at his full-time position, all to his damage in a sum within the jurisdiction of this Court, to be ascertained according to proof.

87. PLAINTIFF also prays for reasonable costs and attorney fees against DEFENDANTS, as allowed by C.C.P. § 1021.5 and any other applicable statutes.

88. DEFENDANTS' actions were willful, malicious, oppressive, and were committed with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights, which entitles PLAINTIFF to exemplary and/or punitive damages in an amount to be proven at trial.

17

COMPLAINT

89.    To the extent that any violations of the above cause of action is based upon the conduct of executives, managers, and supervisors, DEFENDANTS knew about such conduct and ratified such conduct and did so with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights.

WEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as hereinafter set forth.

### FOURTH CAUSE OF ACTION

### Unfair/Unlawful Competition Practices

### Cal. Bus. & Prof. Code §§ 17200, et seq.

### (Against DEFENDANTS ZIMMER BIOMET HOLDINGS, INC.,

### ZIMMER US, INC., BIOMET U.S. RECONSTRUCTION, LLC, BIOMET

### BIOLOGICS, LLC, and BIOMET, INC)

90.    PLAINTIFF repeats, re-alleges, and incorporates herein by this reference the allegations in the foregoing paragraphs, as though fully set forth herein.

91.    Shareholders, owners, directors, officers and/or sole proprietors misappropriated and converted to themselves for their individual advantage the unpaid wages and other monies owed to PLAINTIFF as alleged throughout this complaint. Said individuals includes, but is not limited to DEFENDANT DONALD QUIGLEY. The foregoing conduct, as alleged herein, violates the UCL, Cal. Bus. & Prof. Code § 17200, et seq. The UCL prohibits unlawful, unfair, and fraudulent competition by prohibiting inter alia any unlawful or unfair business acts or practices.

92.    As a result of DEFENDANTS' unfair business practices, DEFENDANTS have reaped unfair benefits and illegal profits at the expense of PLAINTIFF and members of the public. PLAINTIFF's claims in this cause of action do not relate to the misclassification of PLAINTIFF as an independent contractor.

93.    DEFENDANTS' utilization of such unfair business practices constitutes unfair competition and provides an unfair advantage over DEFENDANTS' competitors.

///

18

94. DEFENDANTS should be made to disgorge their ill-gotten gains and restore such monies to PLAINTIFF.

95. PLAINTIFF has suffered injury in fact and lost money or property because of the aforementioned unlawful and unfair competition.

96. Hereby, PLAINTIFF seeks restitution for monies owed to PLAINTIFF but kept by DEFENDANTS.

97. PLAINTIFF is also informed and believes, and based thereon alleges, that the unlawful, unfair and fraudulent business practices described above present a continuing threat to members of the public in that PLAINTIFF and other employees of DEFENDANTS continue to be deprived access to complete wages.

98. Further, such skirting of the California labor laws presents a threat to the general public in that the enforcement of the labor laws is essential to ensure that all California employers compete equally and that no California employer receives an unfair competitive advantage at the expense of its employees

99. DEFENDANTS' unfair business practices entitle PLAINTIFF to seek preliminary and permanent injunctive relief, including but not limited to, orders that DEFENDANTS account for, disgorge and restore to PLAINTIFF the compensation unlawfully withheld by them and for which they were unjustly enriched.

100. As a direct, foreseeable, and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered, and continues to suffer, emotional distress, losses in salary, wages, job benefits, health insurance, and other employment benefits that he would have received from DEFENDANTS, all to his damage in a sum within the jurisdiction of this Court, to be ascertained according to proof.

101. PLAINTIFF also prays for reasonable costs and attorney fees against DEFENDANTS, as allowed by C.C.P. § 1021.5 and any other applicable statutes.

102. DEFENDANTS' actions were willful, malicious, oppressive, and were committed with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights,

///

which entitles PLAINTIFF to exemplary and/or punitive damages in an amount to be proven at trial.

103. To the extent that any violations of the above cause of action is based upon the conduct of executives, managers, and supervisors, DEFENDANTS knew about such conduct and ratified such conduct and did so with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights.

WHEREFORE, Plaintiff prays for judgment against DEFENDANTS as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All DEFENDANTS)

104. PLAINTIFF repeats, re-alleges, and incorporates herein by this reference the allegations in the foregoing paragraphs, as though fully set forth herein.

105. By the conduct alleged in this Complaint, including the above described conduct that is prohibited under Labor Code §1102.5, and others as set forth in this pleading, DEFENDANTS, and each of them, and their supervisors, agents and/or officers, acted outrageously, with the intention to cause, or with reckless disregard of the probability of causing, PLAINTIFF severe emotional distress and bodily injury. This conduct, which was unprivileged and unwanted by PLAINTIFF, was a substantial factor and actually and proximately caused PLAINTIFF severe emotional distress.

106. DEFENDANTS, and each of them, harmed PLAINTIFF because those actions caused him to suffer humiliation, mental anguish, emotional distress, and physical distress.

107. The malicious and/or oppressive conduct of DEFENDANTS and/or DOES 1-50, and each of them, was in reckless disregard of PLAINTIFF's rights and therefore warrants the imposition of punitive damages.

108. DEFENDANT QUIGLEY's conduct was ratified and approved by managing agents of the business entity DEFENDANTS.

///

20

COMPLAINT

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### Retaliation for Filing Employee Safety Complaint

### (Against DEFENDANTS ZIMMER BIOMET HOLDINGS, INC.,

### ZIMMER US, INC., BIOMET U.S. RECONSTRUCTION, LLC, BIOMET

### BIOLOGICS, LLC, and BIOMET, INC)

109. PLAINTIFF repeats, re-alleges, and incorporates herein by this reference the allegations in the foregoing paragraphs, as though fully set forth herein.

110. Pursuant to Labor Code § 6310:

(a)    No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following:

(1)    Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, their employer, or their representative.

111. As alleged above, DEFENDANTS improperly retaliated and discriminated against PLAINTIFF as a result of his reporting of, and his refusal to participate in or to ignore, unsafe working conditions.

112. PLAINTIFF complained to management about unsafe working conditions.

113. As a result of PLAINTIFF's above-referenced complaints of important health and safety, operational and policy concerns and violations, DEFENDANTS retaliated against PLAINTIFF. PLAINTIFF's complaints were a substantial motivating reason for the adverse employment actions complained of.

114. By engaging in the above-referenced acts of retaliation against PLAINTIFF, DEFENDANTS violated Labor Code §6310, and was a substantial factor in causing PLAINTIFF's harm.

///

21

COMPLAINT

115. As a direct and proximate result of the unlawful conduct of DEFENDANTS, and each of them, PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.

116. As a direct and proximate result of the unlawful conduct of DEFENDANTS, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

117. The unlawful conduct alleged above was engaged in by the officers, directors, supervisors and/or managing agents of DEFENDANTS, and each of them, who were acting at all times relevant to this Complaint within the scope and course of their employment. DEFENDANTS and/or DOES 1-50 are, therefore, liable for the conduct of said agents and employees under the Doctrine of Strict Liability.

118. DEFENDANTS' actions were willful, malicious, oppressive, and were committed with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights, which entitles PLAINTIFF to exemplary and/or punitive damages in an amount to be proven at trial.

119. To the extent that any violations of the above cause of action is based upon the conduct of executives, managers, and supervisors, DEFENDANTS knew about such conduct and ratified such conduct and did so with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as set forth below.

///

///

///

22

COMPLAINT

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation

### (Against DEFENDANTS ZIMMER BIOMET HOLDINGS, INC.,

### ZIMMER US, INC., BIOMET U.S. RECONSTRUCTION, LLC, BIOMET

### BIOLOGICS, LLC, and BIOMET, INC)

120. PLAINTIFF repeats, re-alleges, and incorporates herein by this reference the allegations in the foregoing paragraphs, as though fully set forth herein.

121. The elements of negligent misrepresentation are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages." *Majd v. Bank of Am., N.A.* (2015) 243 Cal.App. 4th 1293, 1307, *as modified* (Jan. 14, 2016) (citing *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792); accord *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal. App. 4th 780, 792.

122. Here, DEFENDANTS made false representations as to their intentions to actually pay PLAINTIFF the promised commissions and to provide a reasonable sales territory.

123. PLAINTIFF alleges at the time of uttering these promises, DEFENDANTS knew the promises were false, as DEFENDANTS knew they had no intention of actually making the promised payments and providing the promised territory, or acted without reasonable grounds for believing the promises to be true.

124. DEFENDANTS intended to induce PLAINTIFF's reliance on the promises in order to obtain his agreement to continue working in his position for reduced compensation.

125. PLAINTIFF was induced, in that he did, in fact, continue working as a sales representative for DEFENDANTS for reduced compensation.

126. PLAINTIFF has been harmed by relying on DEFENDANTS' promises above by 1) working for compensation for less than he could have earned at another company and less

///

23

COMPLAINT

than what he had actually earned; 2) not receiving the promised territory; and 3) not receiving the earned commissions.

127. As a direct, foreseeable, and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered, and continues to suffer, emotional distress, losses in salary, wages, job benefits, health insurance, and other employment benefits that he would have received from DEFENDANTS, all to his damage in a sum within the jurisdiction of this Court, to be ascertained according to proof.

128. PLAINTIFF also prays for reasonable costs and attorney fees against DEFENDANTS, as allowed by C.C.P. § 1021.5 and any other applicable statutes.

129. DEFENDANTS' actions were willful, malicious, oppressive, and were committed with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights, which entitles PLAINTIFF to exemplary and/or punitive damages in an amount to be proven at trial.

130. To the extent that any violations of the above cause of action is based upon the conduct of executives, managers, and supervisors, DEFENDANTS knew about such conduct and ratified such conduct and did so with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### Intentional Misrepresentation

### (Against All DEFENDANTS)

131. PLAINTIFF repeats, re-alleges, and incorporates herein by this reference the allegations in the foregoing paragraphs, as though fully set forth herein.

132. The elements of intentional misrepresentation are: 1) the defendant represented to the plaintiff that a fact was true; 2) the defendant's representations were false; 3) the defendant knew that the representation was false when made, or that defendant made the representation recklessly and without regard for its truth; 4) the defendant intended that the plaintiff rely on the

24

COMPLAINT

representations; 5) the plaintiff reasonably relied on the defendant's representations; 6) the plaintiff was harmed; and 7) the plaintiff's reliance on the defendant's representations was a substantial factor in causing his harm.

133. Here, DEFENDANTS made false representations as to their intentions to actually pay PLAINTIFF the commissions he had earned, and to provide PLAINTIFF with the promised sales territory.

134. Plaintiff alleges at the time of uttering these promises, DEFENDANTS knew the promises were false, as DEFENDANTS knew they had no intention of actually making the promised payments, or acted with reckless disregard of the truth of whether they intended the promises to be true.

135. DEFENDANTS intended to induce PLAINTIFF's reliance on the promises in order to obtain his agreement to continue working in his position for reduced compensation.

136. PLAINTIFF was induced, in that he did, in fact, continue working in the position for reduced compensation.

137. PLAINTIFF has been harmed by relying on DEFENDANTS' promises above by 1) working for compensation for less than he could have earned at another company and less than what he had actually earned; 2) not receiving the promised territory; and 3) not receiving the earned commissions.

138. As a direct, foreseeable, and proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered, and continues to suffer, emotional distress, losses in salary, wages, job benefits, health insurance, and other employment benefits that he would have received from DEFENDANTS, all to his damage in a sum within the jurisdiction of this Court, to be ascertained according to proof.

139. PLAINTIFF also prays for reasonable costs and attorney fees against DEFENDANTS, as allowed by C.C.P. § 1021.5 and any other applicable statutes.

140. DEFENDANTS' actions were willful, malicious, oppressive, and were committed with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights,

///

25

COMPLAINT

which entitles PLAINTIFF to exemplary and/or punitive damages in an amount to be proven at trial.

141. To the extent that any violations of the above cause of action is based upon the conduct of executives, managers, and supervisors, DEFENDANTS knew about such conduct and ratified such conduct and did so with the wrongful intent to injure PLAINTIFF and in conscious disregard of PLAINTIFF's rights.

WHEREFORE, PLAINTIFF prays for judgment against Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF hereby prays that the Court enter judgment in his favor and against each DEFENDANT, as follows:

1. For all unpaid wages due to PLAINTIFF on his wage claims, including any and all consequential damages flowing therefrom;

2. For all damages under all applicable Labor Code Sections;

3. For restitutionary disgorgement pursuant to the UCL;

4. An order enjoining Defendants from further unfair and unlawful business practices in violation of the UCL;

5. Prejudgment interest at the maximum legal rate;

6. Reasonable attorneys' fees;

7. Accounting of Defendants' records;

8. General, special and consequential damages, to the extent allowed by law;

9. Costs of suit;

10. Exemplary and punitive damages for malice, fraud, and oppression; and

11. Such other relief as the Court may deem just and proper.

///

///

///

///

26

COMPLAINT

## TRIAL BY JURY

Pursuant to the Section 16 of Article I of the California Constitution, PLAINTIFF is entitled to, and demands, a trial by jury.

Dated: 4-18-2022

JARET & JARET

ROBERT S. JARET

Attorneys for Plaintiff JAMES KARL

27

COMPLAINT

## MARIN COUNTY SUPERIOR COURT
P.O. Box 4988
San Rafael, CA 94913-4988

| | |
|---|---|
| PLAINTIFF: JAMES KARL | CASE NO. CIV2201039 |
| vs. | **NOTICE OF CASE MANAGEMENT CONFERENCE (CIVIL)** |
| DEFENDANT: ZIMMER BIOMET HOLDINGS ET AL | (Pursuant to Government Code Section 68600 et seq.) |

*Pursuant to Local Rule 1.3, the plaintiff must serve a copy of this Notice of Case Management Conference, a blank Case Management Statement (Judicial Council Form CM-110), a blank Notice of Settlement of Entire Case (Judicial Council Form CM-200), and an Alternative Dispute Resolution (ADR) Informational Notice (CV006) together with the complaint on all parties.*

This case is assigned for all purposes to Judge _____ J CHOU _____ in Courtroom B .

1. The parties/counsel to this action shall comply with the filing and service deadlines in Local Rule 1.5 and California Rule of Court 3.110, or appear at the Order to Show Cause hearing on the dates set forth below:

   ~~Failure to File Proof of Service~~ _____ / _____ / _____ ~~8:30 / 9:00 A.M.~~

   ~~Failure to Answer~~ _____ / _____ / _____ ~~8:30 / 9:00 A.M.~~

2. Parties must appear for Case Management Conference on ___9__ / _7_ / _22_ 8:30 / 9:00 A.M.

3. The parties must be familiar with the case and be fully prepared to discuss the suitability of the case for binding or non-binding arbitration, mediation, or neutral case evaluation. **Counsel must discuss ADR options with their clients prior to attending the Case Management Conference** and should be prepared to discuss with the court their authority to participate in ADR.

4. Case Management Conference Statements must be filed with the court and served on all parties <u>at least 15 calendar days</u> before the Case Management Conference. **(Late filing may result in the issuance of sanctions.)**

*Distribution: Original - Court File; Canary - Plaintiff*

CV008     **NOTICE OF CASE MANAGEMENT CONFERENCE (CIVIL)**     Rev. 7/15/15
(Pursuant to Government Code § 68600 et seq.)

---

**MARIN COUNTY SUPERIOR COURT**
3501 Civic Center Drive
P.O. Box 4988
San Rafael, CA 94913-4988
(415) 444-7040

---



## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATIONAL NOTICE
(California Rule of Court 3.221)

**The plaintiff <u>must</u> serve a copy of this notice with the complaint on all parties to this case.**

Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial. Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case.

## <u>ADVANTAGES OF ADR</u>

**Save Time**

A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money**

When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome**

In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships**

ADR can be a less adversarial way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction**

In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

---

## DISADVANTAGES OF ADR

If the case is resolved using ADR, the parties forgo their right to a public trial and they do not receive a decision by a judge or jury. If the case is not resolved using ADR and it proceeds to trial, the overall costs of the case may increase.

## TYPES OF ADR

### Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

### Settlement Conferences

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

### Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

### Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

## LOCAL ADR PROGRAMS

For a Directory of Mediators and Arbitrators or information about the Modest Means Mediation Program, contact the Marin County Bar Association (MCBA) by calling (415) 499-1314 or emailing *info@marinbar.org*. Additional information is also available on the MCBA website: *www.marinbar.org*.

## STIPULATION TO USE ADR

If all parties in the action agree to participate in ADR, a *Stipulation to Use Alternative Dispute Resolution Process (CV002)* may be filed with the court. This form is available at *www.marincourt.org* or in the Clerk's Office.

Please note, **you are required to complete and submit the *Notice of Settlement of Entire Case (Judicial Council Form CM-200)* within 10 days of the resolution of your case.**

# Exhibit B

**BUSINESS INFORMATION**
HOLLI SULLIVAN
INDIANA SECRETARY OF STATE
05/25/2022 10:46 PM

## Business Details

| | | | |
|---|---|---|---|
| Business Name: | **ZIMMER US, INC.** | Business ID: | **2002061000048** |
| Entity Type: | **Foreign For-Profit Corporation** | Business Status: | **Active** |
| Creation Date: | **06/07/2002** | Inactive Date: | |
| Principal Office Address: | **345 EAST MAIN STREET, WARSAW, IN, 46580, USA** | Expiration Date: | **Perpetual** |
| Jurisdiction of Formation: | **Delaware** | Business Entity Report Due Date: | **06/30/2022** |
| Original Formation Date: | **05/06/2002** | Years Due: | **2022/2023** |

## Governing Person Information

| Title | Name | Address |
|---|---|---|
| President | Ivan Tornos | 345 EAST MAIN STREET, Warsaw, IN, 46580, USA |
| CFO | Suketu Upadhyay | 345 EAST MAIN STREET, Warsaw, IN, 46580, USA |
| Secretary | Chad F. Phipps | 345 East Main Street, Warsaw, IN, 46580, USA |
| Director | CHAD F PHIPPS | 345 EAST MAIN STREET, WARSAW, IN, 46580, USA |
| VP and Asst. Secretary | Heather J Kidwell | 345 EAST MAIN STREET, Warsaw, IN, 46580, USA |

## Registered Agent Information

Type: **Business Commercial Registered Agent**

Name: **CORPORATION SERVICE COMPANY**

Address: **135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA**

# Exhibit C

BUSINESS INFORMATION
HOLLI SULLIVAN
INDIANA SECRETARY OF STATE
05/25/2022 10:42 PM

**Business Details**

| | | | |
|---|---|---|---|
| Business Name: | **ZIMMER BIOMET HOLDINGS, INC.** | Business ID: | **2002070200073** |
| Entity Type: | **Foreign For-Profit Corporation** | Business Status: | **Active** |
| Creation Date: | **06/28/2002** | Inactive Date: | |
| Principal Office Address: | **345 EAST MAIN STREET, WARSAW, IN, 46580, USA** | Expiration Date: | **Perpetual** |
| Jurisdiction of Formation: | **Delaware** | Business Entity Report Due Date: | **06/30/2022** |
| Original Formation Date: | **01/12/2001** | Years Due: | **2022/2023** |

**Governing Person Information**

| Title | Name | Address |
|---|---|---|
| Secretary | Chad F. Phipps | 345 E. Main Street, Warsaw, IN, 46580, USA |
| DIRECTOR | CHRISTOPHER B BEGLEY | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |
| DIRECTOR | MICHAEL MICK FARRELL | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |
| Treasurer | SUKETU UPADHYAY | 345 EAST MAIN STREET, WARSAW, IN, 46580, USA |
| DIRECTOR | ROBERT A HAGEMANN | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |
| DIRECTOR | BETSY J BERNARD | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |
| DIRECTOR | ARTHUR J HIGGINS | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |
| DIRECTOR | GAIL K BOURDREAUX | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |
| DIRECTOR | MICHAEL W. MICHELSON | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |
| President | BRYAN C. HANSON | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |
| DIRECTOR | LARRY C. GLASSCOCK | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |

**Registered Agent Information**

Type: **Business Commercial Registered Agent**

Name: **CORPORATION SERVICE COMPANY**

Address: **135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA**

# Exhibit D

**BUSINESS INFORMATION**
HOLLI SULLIVAN
INDIANA SECRETARY OF STATE
05/25/2022 10:51 PM

## Business Details

| | | | |
|---|---|---|---|
| Business Name: | **BIOMET BIOLOGICS, LLC** | Business ID: | **2002082600380** |
| Entity Type: | **Domestic Limited Liability Company** | Business Status: | **Active** |
| Creation Date: | **08/12/2002** | Inactive Date: | |
| Principal Office Address: | **56 E BELL DR, WARSAW, IN, 46582, USA** | Expiration Date: | **Perpetual** |
| Jurisdiction of Formation: | **Indiana** | Business Entity Report Due Date: | **08/31/2022** |
| | | Years Due: | |

## Governing Person Information

| Title | Name | Address |
|---|---|---|
| Member | ZIMMER US, INC. | 345 E. MAIN STREET, Warsaw, IN, 46580, USA |

## Incorporators Information

| Name | Title | Address |
|---|---|---|
| DANIEL P. HANN | Incorporator | PO BOX 587, WARSAW, IN, 46581, USA |

## Registered Agent Information

| | |
|---|---|
| Type: | **Business Commercial Registered Agent** |
| Name: | **CORPORATION SERVICE COMPANY** |
| Address: | **135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA** |

# Exhibit E

**BUSINESS INFORMATION**
HOLLI SULLIVAN
INDIANA SECRETARY OF STATE
05/25/2022 10:47 PM

## Business Details

|  |  |  |  |
|---|---|---|---|
| Business Name: | **BIOMET U.S. RECONSTRUCTION, LLC** | Business ID: | **2012041300267** |
| Entity Type: | **Domestic Limited Liability Company** | Business Status: | **Past Due** |
| Creation Date: | **04/13/2012** | Inactive Date: | |
| Principal Office Address: | **56 EAST BELL DRIVE, WARSAW, IN, 46582, USA** | Expiration Date: | **Perpetual** |
| Jurisdiction of Formation: | **Indiana** | Business Entity Report Due Date: | **04/30/2022** |
| | | Years Due: | **2022/2023** |

## Governing Person Information

| Title | Name | Address |
|---|---|---|
| Member | Zimmer US, Inc. | 345 E. Main St., Warsaw, IN, 46580, USA |

## Registered Agent Information

Type:    **Business Commercial Registered Agent**

Name:    **CORPORATION SERVICE COMPANY**

Address:    **135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA**

# Exhibit F

BUSINESS INFORMATION
HOLLI SULLIVAN
INDIANA SECRETARY OF STATE
05/25/2022 11:02 PM

## Business Details

| | | | |
|---|---|---|---|
| Business Name: | **BIOMET, INC.** | Business ID: | **197711-684** |
| Entity Type: | **Domestic For-Profit Corporation** | Business Status: | **Active** |
| Creation Date: | **11/30/1977** | Inactive Date: | |
| Principal Office Address: | **56 E BELL DR, WARSAW, IN, 46582 - 6989, USA** | Expiration Date: | **Perpetual** |
| Jurisdiction of Formation: | **Indiana** | Business Entity Report Due Date: | **11/30/2023** |
| | | Years Due: | |

## Governing Person Information

| Title | Name | Address |
|---|---|---|
| President | IVAN TORNOS | 345 East Main Street, WARSAW, IN, 46580, USA |
| Secretary | CHAD F. PHIPPS | 345 East Main Street, WARSAW, IN, 46580, USA |
| Treasurer | PRADIPTO BAGCHI | 345 East Main Street, Warsaw, IN, 46580, USA |

## Registered Agent Information

Type: **Business Commercial Registered Agent**

Name: **CORPORATION SERVICE COMPANY**

Address: **135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204, USA**